Nicole L. Greenblatt, P.C.
Susan D. Golden
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Whitney Fogelberg (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| LAKELAND TOURS, LLC, *et al.*,[1] | ) Case No. 20-11647 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**DEBTORS' MOTION**
**FOR ENTRY OF INTERIM AND**
**FINAL ORDERS (I) AUTHORIZING THE DEBTORS**
**TO (A) CONTINUE THEIR PREPETITION INSURANCE**
**COVERAGE AND SURETY BOND, (B) SATISFY PREPETITION**
**OBLIGATIONS RELATED THERETO, (C) RENEW, SUPPLEMENT, AND**
**ENTER INTO NEW INSURANCE POLICIES AND SURETY BONDS, AND (D)**
**CONTINUE TO PAY BROKERAGE FEES, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (this "Motion"):[2]

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/WorldStrides. The location of the Debtors' service address in these chapter 11 cases is: 49 West 45th Street, New York, NY 10036.

[2]     A detailed description of the Debtors and their business, and the facts and circumstances supporting this Motion are set forth in the *Declaration of Kellie Goldstein, Chief Financial Officer of Lakeland Tours, LLC d/b/a WorldStrides, (I) In Support of Chapter 11 Petitions and First Day Pleadings and (II) Pursuant to Local Bankruptcy Rule 1107-2* (the "First Day Declaration"), filed contemporaneously with the commencement of these chapter 11 cases and incorporated by reference herein.

## Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), (a) authorizing the Debtors to (i) continue their prepetition insurance coverage and surety bond, (ii) satisfy prepetition obligations related thereto, (iii) renew, supplement, or enter into new insurance policies and surety bonds in the ordinary course of business on a postpetition basis, and (iv) continue to pay brokerage fees, and (b) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363(b), and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

**Background**

5.      The Debtors, together with their non-Debtor affiliates, provide full-service educational travel and experiential learning programs domestically and internationally for students from K12 to graduate level.  The Debtors are the United States' largest accredited travel company, providing organized educational travel and other experiential learning programs for more than 550,000 students in 2019.  The Debtors generated approximately $650 million in net revenue in fiscal year 2019, and employ approximately 1,500 people domestically and internationally.  The Debtors have historically enjoyed a stable position as the preeminent provider of educational travel.  However, the Debtors' businesses have sustained significant losses as a result of the worldwide shutdown of travel due to the COVID-19 pandemic, with additional constraints to liquidity anticipated in August and September 2020 as the Debtors continue to provide customer refunds.   As of July 20, 2020, (the "Petition Date"), the Debtors have approximately $768 million in funded debt obligations.

6.      Prior to the Petition Date, the Debtors entered into a restructuring support agreement (the "Restructuring Support Agreement") with their key stakeholders, including approximately 85% of the holders of the Debtors' senior secured credit facility, their consenting hedge provider J. Aron & Company, and their sponsors, Eurazeo North America and Primavera Capital Management Ltd. (the "Sponsors"), and launched solicitation of a prepackaged plan of reorganization (the "Plan").  The Debtors have commenced these chapter 11 cases to effectuate the transactions contemplated in the Restructuring Support Agreement and the Plan to restructure their funded debt, while ensuring that the financial restructuring will have a minimal impact on the Debtors' operations, their key business partners, and their customers.

7.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing

their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

### The Debtors' Insurance Policies

8.      As of the Petition Date, the Debtors maintained approximately 40 insurance policies (collectively, the "Insurance Policies") administered by multiple third-party insurance carriers (collectively, the "Insurance Carriers").  A schedule of the Insurance Policies is attached hereto as **Exhibit C**.[3]  The Insurance Policies provide coverage for, among other things, general liability, director and officer liability (including tail coverage), commercial property (including excess liability), event cancellation, foreign liability, crime, automobile liability, cyber, and employment practices liability.  On an annual basis, the Debtors pay approximately $2.6 million, plus applicable taxes and surcharges, for premiums on account of the Insurance Policies.

9.      The continuation of the Insurance Policies and the renewal of and entry into new insurance policies in the ordinary course is essential to the preservation of the value of the Debtors' properties and assets.  Moreover, in many cases, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts governing the Debtors' commercial activities, including the requirement of the United States Trustee for the Southern District of New York (the "U.S. Trustee") that a debtor maintain adequate coverage.  Accordingly, the Debtors request

---

[3]     In addition to the Insurance Policies listed in **Exhibit C** to this Motion, the Debtors maintain insurance policies with respect to, among other things, workers' compensation.  These programs are described, and relief is requested with respect to such programs, in the *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (II) Continue Employee Benefits Programs, and (B) Granting Related Relief*, filed contemporaneously herewith.  Furthermore, although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Insurance Policies.  By this Motion, the Debtors request relief applicable to all Insurance Policies, regardless of whether such Insurance Policy is specifically identified on **Exhibit C**.

authority to maintain their existing Insurance Policies, pay prepetition obligations related thereto, and enter into new insurance policies in the ordinary course of business on a postpetition basis.

10.    As of the Petition Date, the Debtors do not believe they owe any amounts on account of premiums or any other prepetition obligations on account of the Insurance Policies. Out of an abundance of caution, and the comfort of the insurers, the Debtors request the Bankruptcy Court's authority to maintain the existing Insurance Policies, pay any prepetition obligations related thereto, and to renew, supplement, or enter into new Insurance Policies in the ordinary course of business on a postpetition basis to ensure uninterrupted coverage under the Insurance Policies.

11.    Additionally, the Debtors are currently contemplating the purchase of a supplemental D&O insurance policy with a premium payment amount of $500,000 that will become due during the interim period. For the avoidance of doubt, the Debtors request the Bankruptcy Court's authority to make such payment in the ordinary course of business on a postpetition basis.

### Brokerage Fees

12.    The Debtors retain the services of Lockton Companies (the "Broker") to help manage the Debtors' portfolios of risk. The Broker, among other things, assists the Debtors with: (a) obtaining comprehensive insurance coverage for their operations; (b) negotiating policy terms, provisions, and premiums; (c) assisting the Debtors with claims and claims administration; and (d) providing ongoing support throughout policy periods. The Broker does not charge the Debtors fees for their services. Instead, they are compensated by commissions earned and are paid for their services directly by the Insurance Carriers (the "Brokerage Fees"). While the Debtors do not pay the Brokerage Fees, in an abundance of caution, by this Motion, the Debtors request

authorization to honor any amounts owed to the Broker in the ordinary course of business on a postpetition basis to ensure uninterrupted coverage under the Insurance Policies.

### **Surety Bond**

13.     In the ordinary course of business, the Debtors are required to provide a surety bond (the "Surety Bond") to the New York Department of State (the "NY Department of State") to secure the Debtors' payment or performance of certain obligations as a ticket reseller.  The Debtors are required by § 25.15 of the New York Arts and Cultural Affairs Law to post a surety bond securing such obligations in order to continue to engage in the business of reselling tickets to a place of entertainment within the state of New York.  As such, failing to provide, maintain, or timely replace the Surety Bond will prevent the Debtors from reselling tickets, an activity that is integral to the Debtors' business.

14.     As of the Petition Date, the Debtors have one Surety Bond outstanding for the benefit of NY Department of State issued by Travelers Company Inc. (the "Surety").  The Surety Bond provides $25,000 in coverage.  A description of the Surety Bond is attached hereto as **Exhibit D**.

15.     The issuance of a surety bond shifts the risk of the Debtors' nonperformance or nonpayment from the Debtors to a surety.[4]  Unlike an insurance policy, if a surety incurs a loss on a surety bond, it is entitled to recover the full amount of that loss from the principal.  In consideration for the Surety's issuance of the Surety Bond, the Debtors pay a premium for the Surety Bond which is paid by the Debtors when the bond is issued and annually upon renewal (the "Surety Premium").  The annual Surety Premium for the Surety Bond is approximately $250.

---

[4]     Surety bonds involve various agreements between participants.  The party requesting the bond, the obligee, will request that the obligor provide the obligee with a third party's guarantee to make certain payments to the obligee in the event that the obligor is unable.  The third-party guarantor, the surety, will provide, upfront, the full amount of the cash and cash equivalents to the obligee on behalf of the obligor, in exchange for a fee from the obligor and an amount of collateral to secure the surety's issuance of the bond on the obligor's behalf.

16.     As of the Petition Date, the Debtors do not believe they owe any amounts on account of the Surety Premium.  Out of an abundance of caution, and to ensure uninterrupted coverage, the Debtors seek authority to pay the Surety Premium and to honor the obligations related thereto in the ordinary course of business.

**Basis for Relief**

**I.      The Bankruptcy Code and U.S. Trustee Guidelines Require the Debtors To Maintain Insurance Coverage and Satisfy their Insurance Obligations.**

17.     The Debtors' existing Insurance Policies provide a comprehensive range of protection for the Debtors' business, liabilities, properties, and assets.  As such, it is essential that the Debtors' insurance coverage continues in full force and effect during the course of these chapter 11 cases.  Under section 1112(b)(4)(C) of the Bankruptcy Code, "failure [of a debtor] to maintain appropriate insurance [where such failure] poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  Similarly, the Debtors are required by various state and federal regulations (including regulations set by foreign governing bodies) to maintain certain of the Insurance Policies.  In addition, the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "U.S. Trustee Guidelines") require that a debtor "shall maintain" certain types of insurance coverage following the Petition Date.  *See* U.S. Trustee Guidelines, § 6.

18.     To ensure that the Debtors comply with section 1112(b)(4)(C) of the Bankruptcy Code, applicable state and federal regulations, and the U.S. Trustee Guidelines, the Debtors respectfully request the authority to:  (a) honor obligations arising under the Insurance Policies, including those prepetition amounts due in connection with premiums and fees; (b) pay certain brokerage fees (if any); and (c) renew, supplement, modify, or purchase insurance coverage in the ordinary course of business.

II.   **Maintaining, Renewing, Supplementing, Entering into New Insurance Policies and Surety Bonds, and Paying Obligations Related to the Insurance Policies and Surety Bond in the Ordinary Course of Business are Each Warranted.**

19.   The Bankruptcy Code authorizes the Debtors to continue their prepetition practices with respect to their Insurance Policies and the Surety Bond (collectively, the "Insurance and Surety Program"), including maintaining, renewing, supplementing, and entering into new insurance policies and surety bonds, as such practices are in the ordinary course of the Debtors' business.  Alternatively, to the extent any such practices fall outside of the ordinary course of business, the Bankruptcy Court should authorize the Debtors to maintain, renew, or enter into new insurances policies and surety bonds, and post collateral and other financing or payment security on a postpetition basis, as such relief is in the Debtors' sound business judgment.

20.   Section 363(c)(1) of the Bankruptcy Code provides that a chapter 11 debtor in possession "may enter into transactions . . . [or] may use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The Bankruptcy Code does not define the "ordinary course of business."  *In re Roth Am., Inc.,* 975 F.2d 949, 952 (3rd Cir. 1992).  In determining whether a transaction is in the ordinary course of business, this court and others have adopted the two-part "horizontal dimension" and "vertical dimension" test.  *In re Crystal Apparel, Inc.,* 207 B.R. 406, 409 (Bankr. S.D.N.Y. 1997).  Under the horizontal dimension test, the court must analyze whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry. *Id.*  Under the vertical dimension test, the court must analyze the transaction from the perspective of a hypothetical creditor and determine "whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit." *Id.*  In other words, under this two-part test, "the touchstone of ordinariness is thus the interested parties' reasonable expectations of what

8

transactions the debtor in possession is likely to enter in the course of its business." *In re Drexel Burnham Lambert Grp., Inc.,* 157 B.R. 532, 537 (S.D.N.Y. 1993).

21.    Here, the Debtors seek to continue their existing Insurance and Surety Program and to continue to honor their obligations thereunder in the ordinary course of their businesses on a postpetition basis.  The Insurance and Surety Program has been an important part of the Debtors' business operations, and all competitors in the Debtors' line of business maintain similar insurance and surety programs.  Moreover, as noted above, certain Insurance Policies and the Surety Bond are required by statute or regulation.  Accordingly, the Debtors' failure to maintain, renew, or timely replace the existing Insurance Policies and Surety Bond may jeopardize the Debtors' ability to conduct their operations.

22.    Although the Debtors believe continuing the Insurance and Surety Program is within their authority to continue in the ordinary course of business, out of an abundance of caution and to ensure authority to pay any prepetition obligations related to the Insurance and Surety Program, the Debtors are seeking Bankruptcy Court approval for the Debtors' authority to maintain, continue, renew, revise, and supplement the Insurance and Surety Program under sections 105(a) and 363(b) of the Bankruptcy Code.  The use of estate property should be authorized under section 363(b) so long as a sound business purpose exists for the transaction. *See, e.g., In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  Once the debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."

*In re Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)).

23.     Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions.  *See Integrated Res.,* 147 B.R. at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."); *In re First Wellington Canyon Assocs.,* No. 89-593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) (stating that "the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").  In addition, section 105(a) of the Bankruptcy Code codifies the Bankruptcy Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

24.     Similarly, to the extent applicable, courts in this district generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See Ionosphere Clubs,* 98 B.R. at 175 (authorizing payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.),* 29 B.R. 391, 398 (S.D.N.Y. 1983) (authorizing payment of prepetition claims of suppliers); *see also In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as requested herein.

25.     Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See Ionosphere Clubs,* 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363

of the Bankruptcy Code as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ,* 273 B.R. at 497.

26.     In addition, under section 105(a) of the Bankruptcy Code, courts may authorize payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) (the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization); *Ionosphere Clubs,* 98 B.R. at 176 (a court may authorize payments of prepetition obligations under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity")).

27.     The Debtors submit that it is also in the best interests of their estates to have the ability to revise, extend, supplement, or change coverage, as necessary, on a postpetition basis. Indeed, the Debtors' Insurance Policies and Surety Bond are essential to the preservation of the value of the Debtors' business, properties, and assets, and their ability to successfully administer these chapter 11 cases. Accordingly, if any of the Insurance Policies or the Surety Bond lapse, or new or additional coverage is required or necessary, it is imperative that the Debtors are able to renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business. The Insurance Policies protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events.

28.     There is also sufficient basis to permit the Debtors to pay any prepetition obligations related to the Insurance and Surety Program. The failure to pay premiums, brokerage

fees (if any), and related insurance expenses when due may harm the Debtors' estates in a number

of ways. Specifically, the Insurance Carriers may refuse to renew the Debtors' Insurance Policies,

which will require the Debtors to obtain replacement policies and possibly reconfigure their risk

management program. That scenario would require the commitment of significant resources and

could result in less favorable coverage or terms from the Debtors' insurers. Additionally, the

Insurance Carriers could attempt to terminate the Debtors' existing policies, which could threaten

the Debtors' ability to continue operating their businesses given the Debtors' myriad regulatory

and contractual obligations to maintain specific amounts and types of insurance coverage.

29.     Courts in this district have routinely granted relief similar to that requested herein.

*In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. June 29, 2020 (granting interim

relief to pay prepetition insurance and surety obligations and to continue insurance policies and

surety program); *In re Frontier Commc'ns. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May

26, 2020) (granting final relief to pay prepetition insurance and surety obligations and to continue

insurance policies and surety program); *In re Deluxe Ent. Servs. Grp. Inc.*, No. 19-23774 (RDD)

(Bankr. S.D.N.Y. Oct. 9, 2019) (same); *In re Barneys N.Y. Inc.*, No. 19-36300 (CGM) (Bankr.

S.D.N.Y., Aug. 7, 2019) (same); *In re Hollander Sleep Prods., LLC*, No. 19-11608 (MEW)

(Bankr. S.D.N.Y. July 2, 2019) (same).[5]

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

30.     The Debtors expect to have sufficient funds to pay the amounts described in this

Motion in the ordinary course of business by virtue of expected cash flows from ongoing business

operations and anticipated access to debtor-in-possession financing. In addition, under the

Debtors' existing cash management system, the Debtors can readily identify checks or wire

---

[5]  Because of the voluminous nature of these orders, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

transfer requests as relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests that the Bankruptcy Court has not authorized will be inadvertently made. Therefore, the Debtors respectfully request that the Bankruptcy Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied[6]

31.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Accordingly, the Debtors submit that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

32.     To successfully implement the foregoing, the Debtors request that the Bankruptcy Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

---

[6]     As more fully detailed in the Combined Hearing Motion, the Debtors are requesting a Combined Hearing within 30 days of the Petition Date, and the Debtors anticipate a final hearing on the Motion to be held on the same day as the Combined Hearing. Accordingly, the Debtors request relief within the first 30 days of these chapter 11 cases rather than the first 21 days under Bankruptcy Rule 6003.

**Reservation of Rights**

33.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserves their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Bankruptcy Court grants the relief sought herein, any payment made pursuant to the Bankruptcy Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Motion Practice**

34.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of its application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

**Notice**

35.     The Debtors will provide notice of this Motion to:  (a) the United States Trustee for the Southern District of New York, Attn: Benjamin J. Higgins; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the administrative agent under the Debtors' prepetition credit agreement, Latham and Watkins, LLP, 885 Third

Avenue, New York, NY 10022, Attn: Adam J. Goldberg and Hugh Murtagh; (d) counsel to the

Sponsors, Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, NY

10019, Attn: Paul H. Zumbro and George E. Zobitz, and Simpson Thacher & Bartlett LLP, 425

Lexington Avenue, New York, NY 10017, Attn: Michael H. Torkin; (e) counsel to the ad hoc

group of Consenting Lenders, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY

10166, Attn: Scott J. Greenberg, Steven A. Domanowski and Jeremy Evans; (f) the United States

Attorney's Office for the Southern District of New York; (g) the Internal Revenue Service; (h) the

United States Securities and Exchange Commission; (i) the office of the attorney general in the

states where the Debtors conduct their business operations; (j) Insurance Carriers; (k) the Broker;

(l) the Surety; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The

Debtors submit that, in light of the nature of the relief requested, no other or further notice need

be given.

**<u>No Prior Request</u>**

36.      No prior request for the relief sought in this Motion has been made to this or any

other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court enter the

Interim Order and Final Order granting the relief requested herein and such other relief as the

Bankruptcy Court deems appropriate under the circumstances.

Dated:  July 21, 2020        */s/ Nicole L. Greenblatt*
New York, New York        Nicole L. Greenblatt, P.C.
       Susan D. Golden
       **KIRKLAND & ELLIS LLP**
       **KIRKLAND & ELLIS INTERNATIONAL LLP**
       601 Lexington Avenue
       New York, New York 10022
       Telephone:     (212) 446-4800
       Facsimile:     (212) 446-4900

       - and -

       Whitney Fogelberg (*pro hac vice* pending)
       **KIRKLAND & ELLIS LLP**
       **KIRKLAND & ELLIS INTERNATIONAL LLP**
       300 North LaSalle Street
       Chicago, Illinois 60654
       Telephone:     (312) 862-2000
       Facsimile:     (312) 862-2200

       *Proposed Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| LAKELAND TOURS, LLC, *et al.*,[1] | ) | Case No. 20-11647 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE THEIR PREPETITION INSURANCE
COVERAGE AND SURETY BOND, (B) SATISFY PREPETITION
OBLIGATIONS RELATED THERETO, (C) RENEW, SUPPLEMENT, AND
ENTER INTO NEW INSURANCE POLICIES AND SURETY BONDS, AND (D)
CONTINUE TO PAY BROKERAGE FEES, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing,

the Debtors to (i) continue their prepetition insurance coverage and surety bond, (ii) satisfy

prepetition obligations related thereto, (iii) renew, supplement, or enter into new insurance policies

and surety bonds in the ordinary course of business on a postpetition basis, and (iv) continue to

pay brokerage fees, and (b) granting related relief and scheduling a final hearing to consider

approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First

Day Declaration; and this Bankruptcy Court having jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States*

*District Court for the Southern District of New York*, dated January 31, 2012; and this Bankruptcy

Court having found that venue of this proceeding and the Motion in this district is proper pursuant

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/WorldStrides.  The location of the Debtors' service address in these chapter 11 cases is: 49 West 45th Street, New York, NY 10036.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

to 28 U.S.C. §§ 1408 and 1409; and this Bankruptcy Court having found that the Debtors' notice

of the Motion and opportunity for a hearing on the Motion were appropriate under the

circumstances and no other notice need be provided; and this Bankruptcy Court having reviewed

the Motion and having heard the statements in support of the relief requested therein at a hearing

before this Bankruptcy Court (the "Hearing"); and this Bankruptcy Court having determined that

the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the

relief granted herein; and upon all of the proceedings had before this Bankruptcy Court; and after

due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____,

2020, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order

on the Motion shall be filed, with an e-mail copy to the Bankruptcy Court's chambers, on or before

4:00 p.m., prevailing Eastern Time, on _____, 2020.  In the event no objections to entry of

the Final Order on the Motion are timely received, this Bankruptcy Court may enter such Final

Order without need for the Final Hearing.

3.      The Debtors are authorized to continue the Insurance Policies and pay prepetition

or postpetition obligations related thereto.

4.      The Debtors are authorized to administer, defend, litigate and pay prepetition

claims and other obligations that are due and owing or postpetition claims and other obligations

that become due and payable under the Insurance Policies and the Surety Bond, and costs and fees

related thereto.

5.    The Debtors are authorized to renew, amend, supplement, extend, or purchase insurance policies to the extent that the Debtors determine, in their discretion, that such action is in the best interest of their estates.

6.    The Debtors are authorized to maintain, renew, or replace the Surety Bond without interruption, including the payment of premiums (including any such obligations that arose prior to the Petition Date), renewal of or entry into new surety bonds, and execution of other agreements in connection with the Surety Bond.

7.    Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing, and the Debtors are only authorized under this Interim Order to pay amounts that are due and owing prior to the date of the Final Hearing.

8.    Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

9.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

10.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Insurance Policies.

11.     Notwithstanding anything contained in the Motion or this Interim Order, any payment made, and any authorization of the Debtors contained herein shall be subject to the terms and conditions contained in any interim or final orders entered by this Bankruptcy Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "DIP Order").  To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

12.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

13.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.     Notwithstanding anything to the contrary, the terms and conditions of this Interim

Order are immediately effective and enforceable upon its entry.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Interim Order in accordance with the Motion.

16.     This Bankruptcy Court retains exclusive jurisdiction with respect to all matters

arising from or related to the implementation, interpretation, and enforcement of this Interim

Order.

New York, New York
Dated: _____, 2020

_____
THE HONORABLE JUDGE [●]
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| LAKELAND TOURS, LLC, *et al.*,[1] | ) | Case No. 20-11647 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE THEIR PREPETITION INSURANCE COVERAGE AND SURETY BOND, (B) SATISFY PREPETITION OBLIGATIONS RELATED THERETO, (C) RENEW, SUPPLEMENT, AND ENTER INTO NEW INSURANCE POLICIES AND SURETY BONDS, AND (D) CONTINUE TO PAY BROKERAGE FEES, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the Debtors to (i) continue their prepetition insurance coverage and surety bond, (ii) satisfy prepetition obligations related thereto, (iii) renew, supplement, or enter into new insurance policies and surety bonds in the ordinary course of business on a postpetition basis, and (iv) continue to pay brokerage fees, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Bankruptcy Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and this Bankruptcy Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Bankruptcy Court having found that the Debtors' notice

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/WorldStrides.  The location of the Debtors' service address in these chapter 11 cases is: 49 West 45th Street, New York, NY 10036.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Bankruptcy Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Bankruptcy Court (the "Hearing"); and this Bankruptcy Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Bankruptcy Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized to continue the Insurance Policies and pay prepetition or postpetition obligations related thereto.

3.      The Debtors are authorized to administer, defend, litigate and pay prepetition claims and other obligations that are due and owing or postpetition claims and other obligations that become due and payable under the Insurance Policies and the Surety Bond, and costs and fees related thereto.

4.      The Debtors are authorized to renew, amend, supplement, extend, or purchase insurance policies to the extent that the Debtors determine, in their discretion, that such action is in the best interest of their estates.

5.      The Debtors are authorized to maintain, renew, or replace the Surety Bond without interruption, including the payment of premiums (including any such obligations that arose prior to the Petition Date), renewal of or entry into new surety bonds, and execution of other agreements in connection with the Surety Bond.

6.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the

2

validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute

any particular claim on any grounds; (c) a promise or requirement to pay any particular claim;

(d) an implication or admission that any particular claim is of a type specified or defined in this

Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or

lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors'

rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors

that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion

are valid, and the Debtors expressly reserve its rights to contest the extent, validity, or perfection

or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended

and should not be construed as an admission as to the validity of any particular claim or a waiver

of the Debtors' rights to subsequently dispute such claim.

7.     The banks and financial institutions on which checks were drawn or electronic

payment requests made in payment of the prepetition obligations approved herein are authorized

to receive, process, honor, and pay all such checks and electronic payment requests when presented

for payment, and all such banks and financial institutions are authorized to rely on the Debtor's

designation of any particular check or electronic payment request as approved by this Final Order

without any duty of further inquiry and without liability for following the Debtors' instructions.

8.     The Debtors are authorized to issue postpetition checks, or to effect postpetition

fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection

with any Insurance Policies.

9.     Notwithstanding anything contained in the Motion or this Final Order, any payment

made, and any authorization of the Debtors contained herein shall be subject to the terms and

conditions contained in any interim or final orders entered by this Bankruptcy Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "DIP Order"), the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral. To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control. For the avoidance of doubt, the Debtors are not authorized to make any payments pursuant to this Final Order to, or on behalf of, a non-debtor affiliate except as permitted by the Budget (as defined in the DIP Order).

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.     Notwithstanding anything to the contrary, the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

13.     This Bankruptcy Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated: _____, 2020

_____
THE HONORABLE JUDGE [●]
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

**Schedule of Insurance Policies**

| Type of Coverage | Insurance Carrier(s) | Policy Numbers | Term | Annual Gross Premium |
|---|---|---|---|---|
| Executive Risk (Primary) | Nat'l Union Fire Ins Co of Pittsburg, PA | 39882347 | 3/1/2020 to 3/1/2021 | $148,087 |
| Executive Risk (Side A D&O) | Nat'l Union Fire Ins Co of Pittsburg, PA | 39882337 | 3/1/2020 - 3/1/2021 | $10,000 |
| Executive Liability (Excess) | Twin City Fire Insurance | 37PE0348433 | 3/1/2020 to 3/1/3021 | $85,872 |
| Directors & Officers | Nat'l Union Fire Ins Co of Pittsburg, PA | 01-988-35-96 | 12/15/2017 to 12/15/2023 | $7,316 |
| Directors & Officers | Nat'l Union Fire Ins Co of Pittsburg, PA | 18414568 | 2/10/2016 to 2/10/2022 | $21,381 |
| Directors & Officers (Envision) | Starr Indemnity and Liability Company | 1000620739181 | 7/31/2018 to 7/31/2024 | $21,514 |
| Directors & Officers Excess (Envision) | Atlantic Specialty Insurance Company | MMX-01111-18 | 7/31/2018 to 7/31/2024 | $37,435 |
| General/Professional Liability | Steadfast Insurance Co. | EOL5329376 | 9/30/2019 to 9/30/2020 | $384,319 |
| General/Professional Liability | Steadfast Insurance Co. | EOL5329376 | 9/30/2019 to 9/30/2020 | $25,000 |
| Commercial Excess Liability | North River Ins. Co. | 5821128279 | 9/30/2019 to 9/30/2020 | $243,497 |

| Type of Coverage | Insurance Carrier(s) | Policy Numbers | Term | Annual Gross Premium |
|---|---|---|---|---|
| Commercial Excess ($15 mil) | Chubb | 9363-59-15 | 9/30/2019 to 9/30/2020 | $68,999 |
| General Liability | Lexington Insurance Company | 197000924 | 9/30/2019 to 9/30/2020 | $11,699 |
| General Liability | United States Fire Insurance Company | US1284470 | 9/30/2019 to 9/30/2020 | $560 |
| Commercial Property | Zurich | PRA1071630 | 9/30/2019 to 9/30/2020 | $54,804 |
| Foreign Controlled Master Program | Zurich | ZE 1071451 | 9/30/2019 to 9/30/2020 | $15,540 |
| Canada Local Admitted Policy | Zurich | 8845172 (Property) | 9/30/2019 to 9/30/2020 | $11,479 |
| Canada Local Admitted Policy | Zurich | 8845616 | 9/30/2019 to 9/30/2020 | $8,373 |
| Canada Auto Insurance | Aviva Canada | 6741266198 | 1/12/2020 to 1/12/2021 | $2,257 |
| China Local Admitted Policies | Zurich | GL - LA39429C | 9/30/2019 to 9/30/2020 | $3,775 |
| China Local Admitted Policies | Zurich | F030000025SR | 9/30/2019 to 9/30/2020 | $16,804 |

| Type of Coverage | Insurance Carrier(s) | Policy Numbers | Term | Annual Gross Premium |
|---|---|---|---|---|
| Australia Local Admitted Policies | Zurich | 31 2232623 GLR | 9/30/2019 to 9/30/2020 | $9,981 |
| Australia Local Admitted Policies | Zurich | 31 2232790 GPR | 9/30/2019 to 9/30/2020 | $4,116 |
| Australia Local Admitted Policies | Zurich | 312233937 GPI | 9/30/2019 to 9/30/2020 | $9,607 |
| Australia Local Admitted Policy through the lease/landlord | Lloyd's Miramar Underwriting Agency Pty Ltd | VER ALB L8895 2294551/000<br><br>BP-145183 | 5/6/2020 to 5/6/2021<br><br>6/1/2020 to 6/1/2021 | $27,620 |
| Australia Local Auto Policy | QBE Insurance (Australia) Ltd | 1AVA558814MVA | 9/30/2019 to 9/30/2020 | $1,452 |
| UK Local Admitted Policies | Zurich | 7109822 (GL) | 9/30/2019 to 9/30/2020 | $1,680 |
| UK Local Admitted Policies | Zurich | 7120316 (EL) | 9/30/2019 to 9/30/2020 | $3,080 |
| UK Local Admitted Policies | Zurich | 7109808 (PD) | 9/30/2019 to 9/30/2020 | $1,960 |
| Spain Local Admitted Policies | Zurich | 100997097 | 9/30/2019 to 9/30/2020 | $1,592 |
| Freedom of Service | Zurich | ZE 1071451 (GL & Property) | 9/30/2019 to 9/30/2020 | $3,882 |

| Type of Coverage | Insurance Carrier(s) | Policy Numbers | Term | Annual Gross Premium |
|---|---|---|---|---|
| Freedom of Service | Zurich | EOL5329376 (PL) | 9/30/2019 to 9/30/2020 | $2,664 |
| FIFA Agent Insurance | Lloyds of London | PSH1011580290 | 9/30/2019 to 9/30/2020 | $1,283 |
| Event Cancellation | Lloyds Syndicate | SPRAC1902131 | 09/08/2019 to 6/30/2021 | $986,000 |
| Special Risk (K&R) | ACE American Insurance (Chubb) | 8255-2740 | 09/30/2018 to 09/30/2021 | $8,069 |
| Surety Bond | Travelers | 105012612 | 3/12/2020 to 3/12/2021 | $250 |
| Representation/Warranty | Marsh | 64738454 | 02/10/2016 to 02/10/2022 | $190,263 |
| Representation/Warranty | North American Capacity | ET111-000-782 | 07/31/2018 to 07/31/2021 | $40,058 |
| Representation/Warranty | Interstate Fire & Casualty | ET111-000-782 | 07/31/2018 to 07/31/2021 | $5,833 |
| Cyber Insurance | NAS Insurance | 508633 | 09/30/2019 to 9/30/2020 | $69,857 |
| Sexual Misconduct (Envision) Runoff | Beazley Insurance Company, Inc. | B0713 /SPRDR180113 | 1/1/2019 to 1/1/2025 | $47,728 |
| **Total** | | | | $2,595,327 |

## Exhibit D

**Surety Bond**

| Type | Bond Number | Surety Writing Company | Bond Amount |
|------|-------------|------------------------|-------------|
| State | 105012612 | Travelers Company Inc. | $25,000 |